22CV835            SUMMON
           9/14/2022

**SANDUSKY COUNTY CLERK OF COURTS**
100 NORTH PARK AVE., SUITE 208
FREMONT, OH 43420
419334-6161
**SUMMONS ON COMPLAINT**

DWAYNE E. PENN
418 4TH STREET
FREMONT, OH 43420

PLAINTIFF(S)

VS

GREEN BAY PACKAGING INC
2323 COMMERCE DR
FREMONT, OH 43420

CASE NUMBER: 22CV835
PENN, DWAYNE E. VS GREEN BAY PACKAGING INC

DEFENDANT(S)

TO THE ABOVE NAMED DEFENDANT:

You have been named a defendant in a complaint filed in the SANDUSKY COUNTY COMMON PLEAS COURT, 100 NORTH PARK AVE., SUITE 208, FREMONT, OH 43420.

A copy of the complaint is attached.

You are required to appear and defend this action by serving an answer to the complaint on the Plaintiff's attorney or on the Plaintiff if he has no attorney. Your answer must be served within twenty-eight (28) days after the service of this summons. A copy of your answer must be also filed with this court within three (3) days after service on the Plaintiff's attorney or the Plaintiff.

The Plaintiff's attorney is:

KEVIN A BURYANEK ESQ.
25825 SCIENCE PARK DR, STE 200
BEACHWOOD, OH 44122
PHONE: (216) 291-4744
FAX: (216) 291-5744

Failure to appear and defend this action will result in a judgment by default being taken against you for the relief demanded in the attached complaint.

**CHRIS A. SCHNEIDER**
**CLERK OF COURTS**
By: _____ DATE: 9/14/2022
Deputy Clerk

(Rule 4 - 1970 Ohio Rules of Civil Procedure)

EXHIBIT A

IN THE COURT OF COMMON PLEAS
SANDUSKY COUNTY, OHIO

SANDUSKY COUNTY
COMMON PLEAS COURT
FILED
2022 SEP 13 PM 2: 50
CHRIS SCHNEIDER
CLERK

| | | |
|---|---|---|
| DWAYNE PENN<br>418 4th Street<br>Fremont, Ohio 43420<br><br>           Plaintiff,<br><br>v.<br><br>GREEN BAY PACKAGING, INC.<br>2323 Commerce Drive<br>Fremont, Ohio 43420<br><br>   Serve also:<br>   GREEN BAY PACKAGING, INC.<br>   c/o CT CORPORATION SYSTEM<br>   Statutory Agent<br>   4400 Easton Commons Way<br>   Suite 125<br>   Columbus, Ohio 43219<br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 22CV835<br><br>JUDGE JON M. ICKES<br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff Dwayne Penn, by and through his undersigned counsel, as his Complaint against Defendant Green Bay Packaging, Inc. ("Green Bay"), hereby states and avers the following:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff Dwayne Penn is a natural person and resident of the City of Fremont, County of Sandusky, State of Ohio.

2. Defendant Green Bay is a foreign, for-profit corporation organized under the laws of the State of Wisconsin with a principal place of business located at 2323 Commerce Drive, Fremont, Ohio 43420.

3. All of the material events alleged in this Complaint occurred in Sandusky County, Ohio.

4. Personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and (4).

5. Venue is proper pursuant to Civ. R. 3(C)(2), (3), and (6).

State of Ohio, Sandusky County, SS:
I hereby certify that this is a true copy of the original document now on file in my office this _____ day of _____, 20___.

CHRIS SCHNEIDER
Sandusky County Clerk of Courts
By_____
        Deputy Clerk

6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Penn is a former employee of Green Bay.

8. Penn began his employment with Green Bay on or about September 14, 2020.

9. Green Bay initially employed Penn as a General Helper at its Fremont plant.

10. In or around October 2020, Green Bay promoted Penn to the position of Stacker.

11. In or around November 2020, Green Bay again promoted Penn, this time to the position of Second Operator.

12. On or about November 25, 2020, Penn received a highly positive performance review by Green Bay.

13. On or about November 30, 2020, Penn developed symptoms of Covid-19 ("Penn's Covid Symptoms").

14. Penn's Covid Symptoms included fatigue, nausea, a headache, and a fever.

15. On or before his scheduled shift on November 30, 2020, Penn disclosed Penn's Covid Symptoms to Green Bay's on-duty supervisor.

16. After Penn disclosed Penn's Covid Symptoms, the supervisor on duty told Penn not to come in if Penn was experiencing a fever.

17. On or about the morning of December 1, 2020, Penn disclosed Penn's Covid Symptoms to Susan Springer.

18. At all times relevant herein, Springer was employed by Green Bay as a Human Resources representative.

19. After Penn Disclosed Penn's Covid Symptoms to Springer, Springer told Penn to undergo a Covid-19 test as soon as possible and to not return until he received the results of his test.

EXHIBIT A

20. On or about December 1, 2020, Penn first contacted his healthcare provider to schedule a Covid-19 test, but was unable to.
21. Subsequently, on or about December 1, 2020, Penn went to an urgent care center to undergo a Covid-19 test.
22. The urgent care center that Penn went to had run out of tests by the time he arrived.
23. Penn spent the remainder of December 1, 2020 attempting to schedule a Covid-19 test.
24. Penn was in constant contact with Springer on December 1, 2020 and December 2, 2020, as he attempted to schedule and procure a Covid-19 test.
25. On or about December 2, 2020, Penn was finally able to schedule a Covid-19 test.
26. Penn underwent his Covid-19 test on or about December 2, 2020.
27. On or about December 4, 2020, Springer contacted Penn to inform him his employment with Green Bay was being terminated.
28. Springer told Penn he was being terminated for allegedly failing to advise Green Bay of his health status while attempting to schedule a Covid-19 test.
29. Penn received his Covid-19 test results on or about December 7, 2020.
30. Green Bay's assertion that Penn failed to advise Green Bay of Penn's health status while attempting to schedule a Covid-19 test has no basis in fact.
31. Green Bay's assertion that Penn failed to advise Green Bay of Penn's health status while attempting to schedule a Covid-19 test did not actually motivate Green Bay's decision to terminate Penn.
32. Green Bay's assertion that Penn failed to advise Green Bay of Penn's health status while attempting to schedule a Covid-19 test was pretext to terminate Penn's employment.
33. Green Bay terminated Penn's employment because Penn reported Penn's Covid Symptoms.

EXHIBIT A

34. Green Bay terminated Penn's employment because Penn sought to protect his own life, health, and safety, and his coworkers' life, health, and safety, by quarantining until he could confirm whether he had contracted Covid-19.

35. Upon information and belief, Green Bay has a progressive disciplinary policy.

36. Green Bay knowingly skipped progressive disciplinary steps in terminating Penn.

37. Green Bay knowingly terminated Penn's employment.

38. Green Bay knowingly took an adverse employment action against Penn.

39. Green Bay knowingly took an adverse action against Penn.

40. Green Bay intentionally skipped progressive disciplinary steps in terminating Penn.

41. Green Bay intentionally terminated Penn's employment.

42. Green Bay intentionally took an adverse employment action against Penn.

43. Green Bay intentionally took an adverse action against Penn.

44. Green Bay knew that skipping progressive disciplinary steps in terminating Penn would cause Penn harm, including economic harm.

45. Green Bay knew that terminating Penn would cause Penn harm, including economic harm.

46. Green Bay willfully skipped progressive disciplinary steps in terminating Penn.

47. Green Bay willfully terminated Penn's employment.

48. Green Bay willfully took an adverse employment action against Penn.

49. Green Bay willfully took an adverse action against Penn.

50. The above facts demonstrate that Green Bay engaged in a pattern and practice of unlawful retaliation.

51. There was a causal connection between Penn reporting Penn's Covid Symptoms and Green Bay's decision to terminate Penn.

EXHIBIT A

52. As a direct and proximate result of Green Bay's conduct, Penn has suffered and will continue to suffer damages.

### COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

53. Penn restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

54. On or about March 9, 2020, Ohio Governor Mike DeWine declared a State of Emergency in Executive Order 2020-01D, due to the Covid-19 pandemic.

55. On or about March 22, 2020, the Ohio Department of Health ("ODH") issued The Director's Stay at Home Order, requiring employers to "[e]nsure that your sick leave policies are up to date, flexible, and non-punitive to allow sick employees to stay home to care for themselves, children, or other family members." ("Stay at Home Order").

56. Pursuant to ODH's Stay at Home Order, employers were also required to "[s]eparate employees who appear to have acute respiratory illness symptoms from other employees and send them home immediately[,]" and "[r]estrict their access to the business until they have recovered."

57. The Stay at Home Order was enacted in accordance with emergency powers granted to ODH in Executive Order 2020-01D.

58. R.C. § 3701.352 states: "No person shall violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event."

59. R.C. § 4101.11 states that every Ohio employer is responsible for protecting its employees and guests by furnishing and using safety devices and safeguards and that employers shall "do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

5

Case: 3:22-cv-01868-JJH  Doc #: 1-1  Filed: 10/14/22  7 of 10.  PageID #: 12

60. R.C. § 4101.12 requires every Ohio employer to furnish a safe place of employment, follow orders, and use methods and processes to make or keep a safe workplace and that employers shall do "every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

61. R.C. § 4101.12 further provides: "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

62. An employer's failure to ensure a safe work environment violates Ohio public policy, as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385 (2002).

63. The United States District Court for the Southern District of Ohio has held that "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, *10 (S.D. Ohio Nov. 14, 2016).

64. The Ohio Tenth District Court of Appeals, in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014), held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

65. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

6

66. A clear public policy exists and is manifested in R.C. § 4101.11, which states that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

67. A clear public policy exists and is manifested in R.C. § 4101.12, which states that "no employer shall require, permit, or suffer any employee to go or being in any employment or place of employment which is not safe[,]" and "no employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

68. A clear public policy exists and is manifested in the Stay at Home Order, which required employers to implement "non-punitive" sick leave policies "to allow sick employees to stay home to care for themselves, children, or other family members."

69. A clear public policy exists and is manifested in the Stay at Home Order, which required employers to "[s]eparate employees who appear to have acute respiratory illness symptoms from other employees and send them home immediately[,]" and "[r]estrict their access to the business until they have recovered."

70. A clear public policy exists and is manifested in R.C. § 3701.352, against violating orders promulgated by ODH.

71. Green Bay's termination of Penn, after he reported experiencing symptoms of Covid-19, jeopardizes these public policies.

72. Green Bay's termination of Penn, after he began quarantining until he could procure a Covid-19 test to confirm whether he had contracted Covid-19, jeopardizes these public policies.

73. Green Bay's termination of Penn was motivated by conduct related to these public policies.

74. Green Bay had no overriding business justification for terminating Penn.

EXHIBIT A

75. As a direct and proximate result of Green Bay's conduct, Penn has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Dwayne Penn demands from Green Bay the following:

(a) Issue an order requiring Green Bay to restore Penn to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Green Bay of compensatory and monetary damages to compensate Penn for lost wages, emotional distress, and/or other consequential damages, in an amount in excess of $25,000.00 per claim to be proven at trial;

(c) An award of punitive damages against Green Bay in an amount in excess of $25,000.00;

(d) An award of reasonable attorneys' fees and non-taxable costs for Penn's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Daniel S. Dubow

Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
daniel.dubow@spitzlawfirm.com
kevin.buryanek@spitzlawfirm.com

*Attorneys for Plaintiff Dwayne Penn*

8

## JURY DEMAND

Plaintiff Dwayne Penn hereby demands a trial by jury by the maximum number of jurors permitted.

/s/ *[signature]*
Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
SPITZ, THE EMPLOYEE'S FIRM

EXHIBIT A